IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES HENRY BAUM, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 20-46-E |
| ANDREW M. SAUL, | ) |
| Defendant. | ) |

<u>ORDER</u>

AND NOW, this 19th day of May, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 15), filed in the above-captioned matter on January 8, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13), filed in the above-captioned matter on December 9, 2020,

IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner"), as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g).

**I.   Background**

James Henry Baum ("Plaintiff") protectively filed his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, on September 11, 2017. (R. 10). He was initially denied November 9, 2017 and sought a hearing. (R. 117, 124). A hearing before the Administrative Law Judge ("ALJ") took place February 8, 2019. (R. 31). In a decision dated February 26, 2019, the ALJ found Plaintiff not

disabled. (R. 18). Plaintiff requested the Appeals Council's review but was declined. (R. 1).[1] Plaintiff timely filed his Complaint against the Commissioner before the Court (Doc. No. 1), and the parties have filed cross-motions for summary judgment. (Doc. Nos. 13—16).

### II.     Standard of Review

The Court is authorized to review the final decision in this matter and render "a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The objective of the Court's review is to "determin[e] whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." *Sweeney v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 797, 799 (W.D. Pa. 2012) (citing *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). Substantial evidence is just "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, an ALJ may not rely solely on evidence in the record "which supports the result," but must explain which, if any, evidence was rejected and why. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Where an ALJ fails in this regard, reviewing courts may not fill in the gaps with their "own independent analysis." *Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943)).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] When the Appeals Council declined to review the ALJ's decision, that made "the ALJ's determination the final decision of the Commissioner." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). ALJs use a "five-step test" to evaluate a claimant's disability according to that definition. *Burns v. Barnhart*, 312 F.3d 113, 118—19 (3d Cir. 2002). At steps one through four, the claimant must prove: "(1) [he] is not currently engaged in gainful employment because [he] (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves [him] lacking the [residual functional capacity ("RFC")] to return to [his] previous employment." *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Claimants who demonstrate they meet or equal a listed impairment at step three are found disabled without further inquiry. *Id.* When a claimant does not suffer from a listed impairment, but proves his RFC does not permit a return to previous employment, "the burden . . . shifts to the Commissioner at step [five] to show that other jobs exist in significant numbers in the national economy that the claimant could perform." *Id.* At this last step, the ALJ considers "the cumulative effect of all the claimant's impairments," and "often seek[s] the assistance of a vocational expert." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

### III.    The ALJ's Decision

The ALJ considered Plaintiff's medical history and, applying the five-step test, found at step one that Plaintiff had not "engaged in substantial gainful activity since September 11, 2017, the application date." (R. 12). At step two, the ALJ found Plaintiff suffered from six severe impairments: "[1] history of left ankle fracture, [2] obesity, [3] depression, [4] bipolar disorder, [5] anxiety, and [6] posttraumatic stress disorder ('PTSD')." (R. 12). The ALJ noted Plaintiff's testimony concerning "scoliosis, neck pain, and migraine headaches," but found the objective medical evidence did not support including them among his severe, medically determinable

impairments. (R. 12). The ALJ also noted Plaintiff's testimony regarding "schizophrenia, paranoia, and hallucinations," but found those conditions had not lasted twelve months and, therefore, could not constitute severe impairments. (R. 12).

Next, at step three, the ALJ considered whether any of Plaintiff's impairments, or combination thereof, met or medically equaled a listed impairment. (R. 12). The ALJ specifically considered listings 1.02 (*Major dysfunction of a joint(s)*), 1.03 (*Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*), 12.04 (*Depressive, bipolar and related disorders*), 12.06 (*Anxiety and obsessive-compulsive disorders*), and 12.15 (*Trauma- and stressor-related disorders*). (R. 12—13). For listings 1.02 and 1.03, the ALJ determined Plaintiff lacked the requisite "inability to ambulate effectively." (R. 12). For listings 12.04, 12.06, and 12.15, the ALJ determined Plaintiff failed to show he suffered from "at least one extreme or two marked limitations in a broad area of functioning." (R. 13). Nor did he qualify for those listings based on another set of criteria—the "paragraph C" criteria. (R. 13).

Having determined Plaintiff's medical conditions did not meet or equal a listed impairment, the ALJ moved forward through the remaining steps. The ALJ formulated Plaintiff's RFC to account for all the symptoms that could "reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 14). The ALJ first noted Plaintiff's testimony regarding: his fractured left ankle; feelings of restlessness, "guilt and worthlessness," lack of energy, sadness, suicidal thoughts, and fatigue; his biweekly panic attacks, flashbacks, and his use of a cane "to aid in ambulation"; and the practical consequences of his ankle instability, *i.e.*, only being able to walk 100 yards, stand for a half hour, and lift five pounds. (R. 14—15). The ALJ then considered Plaintiff's medical records, including: records indicating his "ankle injury is better," as well as his use of an ankle brace and medication to

manage his symptoms; records indicating he "ambulate[s] with a cane," and had some continuing stiffness, but improved swelling; his diagnoses of bipolar disorder, anxiety disorder, and PTSD, as well as his "history of trauma that has impacted his mental health"; "[m]ental status examination findings [that] were relatively normal, with some mood and affect abnormalities, some thought disturbance, and limited insight"; the lack of significant side effects from his medication; and appropriate medication adjustment/management. (R. 15—16). Finally, the ALJ considered the medical opinion evidence and found the treating physician's opinion "not persuasive" because it was inconsistent with other evidence, and was, in some respects, "outside [his] area of practice." (R. 16). However, the ALJ found the state agency medical and psychological consultants' opinions persuasive because they were consistent with other evidence in the record. (R. 16).

Assessing that evidence, the ALJ determined that while Plaintiff's medically determinable impairments could cause his symptoms, Plaintiff's representation of their "intensity, persistence[,] and limiting effects" were "not entirely consistent with" the evidence. (R. 15). Accordingly, the ALJ set Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except that he is limited to lifting or carrying up to 20 lbs. occasionally and up to 10 lbs. frequently; he can stand or walk for approximately six hours in an eight hour workday; he can sit for approximately six hours in an eight hour workday; he requires normal breaks; he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; he can occasionally balance, stoop, or kneel; he is limited to SVP 1 and 2 jobs; he is limited to simple, routine, and repetitive tasks; involving only simple, work-related decisions; with few, if any, workplace changes; and he is limited to only occasional interaction with the public; only occasional interaction with co-workers with no tandem tasks; and only occasional supervision.

(R. 14). With that RFC, Plaintiff would not have been able to return to his prior work as a polisher/buffer. (R. 16). However, with the assistance of a vocational expert ("VE"), the ALJ

determined at step five that Plaintiff's RFC, age, education, and work experience would permit his performance as a "laundry folder," "off-hours cleaner," and "sorter." (R. 17). Thus, the ALJ found Plaintiff not disabled. (R. 18).

## IV.     Legal Analysis

Plaintiff challenges the ALJ's non-disability determination on three grounds. First, Plaintiff argues the ALJ failed to find he satisfied the criteria for a listed mental health impairment. Second, Plaintiff argues the evidence shows he cannot ambulate effectively and therefore qualifies for listed impairments 1.02 and 1.03. Third, Plaintiff argues his RFC—particularly the ALJ's finding that Plaintiff can stand or walk for six hours—is unsupported by substantial evidence. Because the ALJ's decision is, in some respects, not thorough enough to permit meaningful review, the matter will be remanded for further proceedings.

Plaintiff's third and most compelling argument for remand is that the RFC determination is not supported by substantial evidence. A disability claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)); 20 C.F.R. § 416.945(a)(1). The ALJ must explain "how the evidence supports each conclusion" contained in the RFC, SSR 96-8P, 1996 WL 374184, at *7, including what, if any, evidence was rejected and why. *See Cotter*, 642 F.2d at 707. Conclusory statements that fail to show how the evidence led the ALJ to the RFC are to be avoided. *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citing *Hodes v. Apfel*, 61 F. Supp. 2d 798, 806 (N.D. Ill. 1999)).

In this matter, the ALJ found Plaintiff's RFC included the capacity for light work with the ability to stand or walk for six hours each eight-hour workday. (R. 14). The ALJ explained that he had considered Plaintiff's testimony that he could walk up to 100 yards, medical records

indicating Plaintiff could walk five or six blocks, and two medical opinions—one the ALJ found unpersuasive that would have limited standing and walking to one hour/day, and another the ALJ found persuasive that would have limited standing and walking to "[a]bout six hours"/day.  (R. 14—16) (citing R. 284, 107).  The ALJ found Plaintiff's complaints "excessive" and imposed the six-hour limit.  (R. 14—15).  The Government argues that finding is supported by the second medical opinion and is therefore supported by substantial evidence.  (Doc. No. 16, pgs. 25—26).  The Court disagrees.  The ALJ explained that he found the medical opinion with the six-hour stand-or-walk limit persuasive because it was consistent with the record.  However, the ALJ did not identify which evidence was consistent with the opinion.  The brevity of the ALJ's decision in this regard frustrates the Court's review.

Also problematic is the ALJ's failure to address the VE's testimony that Plaintiff's light-work job prospects significantly diminished with his use of a cane.  As recounted *supra*, at Section III, the ALJ enlisted the VE's assistance to identify jobs for a hypothetical individual with Plaintiff's RFC.  The VE identified three appropriate jobs—hand-folder, off-hours cleaner, and sorter.  (R. 64).  However, when Plaintiff's attorney added to the hypothetical that the individual would use a cane to ambulate, the VE testified that two of those jobs—hand-folder and off-hours cleaner—would become unavailable.  (R. 67).  In his final decision, the ALJ relied on the original hypothetical, without the cane, and decided Plaintiff could perform all three jobs.  The ALJ did not address or reject the VE's cane testimony in the decision.  (R.17).

While the ALJ was not required to include every limitation Plaintiff alleged in the hypothetical questions posed to the VE, *Rutherford*, 399 F.3d at 554, the ALJ should have explained why he implicitly rejected evidence Plaintiff used a cane and the VE's testimony concerning how that would affect his job prospects.  Plaintiff's testimony and some evidence in

the record supports the Plaintiff's use of a cane to ambulate. (R. 52, 260, 268—*Dr. Popescu noting Plaintiff's complaints related to ankle pain*). Curiously, the ALJ appeared to accept the evidence of Plaintiff's reliance on a cane. (R. 15) ("Claimant does ambulate with a cane, he continued to report stiffness in his ankle, but his swelling improved."). The Court cannot discern why, when the ALJ appeared to accept that Plaintiff used a cane to ambulate, the ALJ would then reject, without explanation, the VE's testimony concerning Plaintiff's job prospects with a cane. Rejected evidence must be accompanied by an explanation for the Court to find a decision is supported by substantial evidence. *Cotter*, 642 F.2d 705. It is in this regard that the ALJ's decision falls short.[2]

The Government argues that the ALJ reasonably omitted Plaintiff's use of a cane from the RFC and from the questions posed to the VE because Plaintiff's medical records show that he used his cane inconsistently. (Doc. No. 16, pg. 26). Further, the Government argues that the ALJ was not "required" to rely on the VE's testimony with the addition of the cane because there was no evidence the cane was "medically necessary." (Doc. No. 16, pg. 26). The Court acknowledges that the ALJ might have omitted the cane from his consideration of Plaintiff's RFC and the VE's testimony for those very reasons, however, the ALJ must demonstrate his reasoning. Further, though the Government urges the Court to consider that Plaintiff may have

---

[2] As Plaintiff points out (Doc. No. 14, pgs. 17—18), if a VE's answer to a hypothetical question is to be counted as substantial evidence, the hypothetical question must include all of the claimant's conditions that are supported by the record. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). However, the ALJ's error in this instance is not necessarily failure to include Plaintiff's use of a cane in the determinative hypothetical question, but rather the ALJ's failure to explain whether he would accept or reject Plaintiff's reliance on a cane and why.

often arrived at medical appointments without a cane, the Court may not fill a gap in the ALJ's decision with its own analysis. *Fargnoli*, 247 F.3d at 44 n.7.[3]

On remand, the ALJ should also address Plaintiff's argument that his mental health impairments meet the criteria for a listed impairment. The three mental health listings the ALJ considered (12.04, 12.06, and 12.15) are defined by three sets of criteria. Paragraph A criteria concern medical documentation of a disorder. 20 C.F.R. § 404, Subpt. P, App. 1. Claimants must demonstrate they satisfy paragraph A criteria as well as either paragraph B criteria or paragraph C criteria. *Id.* Paragraph B criteria concern the intensity of certain limitations related to a disorder, and paragraph C criteria gauge whether a disorder is "serious and persistent." *Id.*

Plaintiff raises here the ALJ's treatment of the paragraph B and C criteria, particularly as they relate to listing 12.15 (*Trauma- and stressor-related disorders*).[4] The ALJ concluded Plaintiff had not demonstrated satisfaction of the paragraph B criteria, *i.e.*, shown his mental impairments "result[ed] in at least one extreme or two marked limitations in a broad area of functioning." (R. 13). The ALJ found Plaintiff had a "mild limitation" in "understanding, remembering, or applying information"; a "moderate limitation" in "interacting with others"; a

---

[3] Plaintiff notes that, to the extent the VE's testimony appeared to indicate sedentary jobs might also be available, the ALJ did not address whether Plaintiff's off-task time and absences are compatible with those jobs. (Doc. No. 14, pg. 19). The Government counters that Plaintiff's argument concerning off-task time and absences is waived because it lacks specificity and support. (Doc. No. 16, pg. 27). In any event, the ALJ did not rely on Plaintiff's ability to perform sedentary work, and the Court will not address alternative decisional bases. *Id.* Plaintiff may raise his arguments concerning additional limitations, *e.g.*, symptoms of his "orthopedic/spinal complaints and his migraines" (Doc. No. 14, pg. 18), as well as off-task time and absences, on remand.

[4] Plaintiff argues that the ALJ "overlooked or misapprehended" both the "medical evidence and definition of PTSD." (Doc. No. 14, pg. 9). However, the ALJ specifically noted Plaintiff's PTSD diagnosis (R. 15) and included it among Plaintiff's severe medically determinable impairments. (R. 12).

"mild limitation" in "concentrating, persisting, or maintaining pace"; and a "mild limitation" regarding "adapting or managing oneself." (R. 13). The ALJ based these findings on Plaintiff's testimony, self-reported daily activities, and the state agency psychological consultant's findings. (R. 13). The ALJ further concluded Plaintiff had not demonstrated the "serious and persistent criteria" at paragraph C. To satisfy paragraph C, claimants must demonstrate (1) at least two years' history of the trauma/stressor disorder, (2) ongoing treatment "that diminishes the symptoms and signs" of the disorder, and (3) "[m]arginal adjustment," *i.e.*, a "minimal capacity to adapt to changes in . . . environment" or to new demands. 20 C.F.R. § 404, Subpt. P, App.1 § 12.15. Assessing the paragraph C criteria, the ALJ explained "[t]he undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (R. 13).

Though the ALJ's discussion of the paragraph B criteria is adequately detailed to permit review and the ALJ's finding as to paragraph B is supported by substantial evidence, the ALJ's discussion of the paragraph C criteria is deficient in its brevity. The ALJ's two-sentence consideration of the paragraph C criteria does little to demonstrate the ALJ's reasoning. From those two sentences, it might be surmised that the ALJ found Plaintiff failed to prove any one of paragraph C's three criteria, or all of them. The Court would be in a better position to review the ALJ's decision in this regard had the ALJ identified exactly where Plaintiff fell short. *See Pfeister v. Bowen*, 673 F. Supp. 723, 726 (W.D. Pa. 1987) ("Should the ALJ fail to set forth detailed findings as to the basis of his decision, the case must be remanded."). Findings that lack detail impede the Court's review. *See id.* Therefore, the Court will remand.[5]

---

[5] The ALJ's decision as to listings 1.02 and 1.03 require no further examination on remand. While Plaintiff argues the condition of his ankle prevents effective ambulation, he has not pointed to any evidence in the record that supports that argument. "Ineffective ambulation is

V.     **Conclusion**

      For the foregoing reasons, the Court finds the ALJ's decision is not supported by substantial evidence. Accordingly, the Court hereby remands this matter to the Commissioner for reconsideration consistent with this Order.

                                                                              s/ Alan N. Bloch
                                                                              United States District Judge

ecf:   Counsel of record

---

defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." 20 C.F.R. § 404, Subpt. P, App. 1, § 1.00B2b (emphasis added). Plaintiff merely argues he is "using his cane more now than he has been in the past," (Doc. No. 14, pg. 15), but he points to no evidence that his cane limits functioning in both upper extremities. Therefore, the Court discerns no error in the ALJ's consideration of listings 1.02 and 1.03.